127 P.3d 178

**In the Matter of the John WEICK, Contempt Appeal.**

**Rocky Watson and Mary Watson, husband and wife, Plaintiffs,**

v.

**John Weick and Julie Weick, husband and wife, Defendants,**

**John Weick, Defendant–Appellant,**

v.

**Honorable John T. Mitchell, District Judge, First Judicial District, State of Idaho, Respondent.**

No. 30988.

Supreme Court of Idaho, Coeur d'Alene, October 2005.

Dec. 30, 2005.

Stephen Brian McCrea; Ramsden & Lyons, Coeur d'Alene, for appellants. Michael E. Ramsden argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Roger L. Gable, Deputy Attorney General argued.

BURDICK, Justice.

This case arises out of the failure of Appellant John Weick (Weick) to comply with Respondent Judge John T. Mitchell's (Judge Mitchell) order to appear at a debtor's exam. Respondent subsequently found Appellant in contempt and sentenced him to five days in jail. The case comes to this Court on appeal from Judge Mitchell ordering Weick to five days in jail. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Rocky and Mary Watson (collectively the Watsons) filed a complaint against John and Julie Weick (collectively the Weicks) seeking to recover on a promissory note used to pay for a portion of the sale of a business. The Weicks filed a counterclaim. The Watsons moved for summary judgment, and Judge Mitchell entered summary judgment in their favor and awarded them a judgment of over $200,000.[1]

Following the entry of this judgment, the Watsons began collection on the judgment. They moved for an order for examination of Weick, which Judge Mitchell granted on May

10, 2004 (the first order). The Watsons and Weick stipulated to the entry of the first order.

This order required Weick to appear for examination on May 13, 2004 (the May 13 debtor's exam). The evening prior to the scheduled debtor's exam, Weick informed his counsel that he would attend the following day. However, on the morning of May 13, 2004, Weick was suffering from "severe intestinal distress" and informed his counsel that he would not be able to attend the debtor's exam. Weick's counsel informed the Watsons' counsel of this development. That same day, the Watsons filed a Motion for Order Finding John Weick in Contempt, a Motion to Shorten Time, a Notice of Hearing, and supporting memorandum. The following day Weick filed an affidavit, stating that he failed to attend the debtor's exam due to his illness and stating that his failure to attend was not "intentionally done to delay or cause any problems."

On May 18, 2004 Judge Mitchell heard the Watsons' motion and entered a Second order Compelling Debtor's Examination of Defendant John Weick (second order or amended order). This debtor's exam was scheduled for May 26, 2004 (the May 26 debtor's exam), and Weick attended this exam. On July 7, 2004, the Watsons filed a Second Motion for Order Finding John Weick in Contempt for violating the first order. At the hearing on that motion Judge Mitchell determined that the alleged contempt was indirect contempt. Judge Mitchell informed Weick that he had certain rights, and Weick signed a statement of rights. Since he lacked personal knowledge of the alleged contempt, Judge Mitchell issued an Order to Show Why John Weick Should Not Be Held in Contempt following the hearing.

At the hearing on this order to show cause, Weick denied the allegations, but neither he nor the Watsons presented any evidence. Rather they made arguments based on the record before Judge Mitchell. Following the hearing, Judge Mitchell issued an order finding Weick in contempt based on his failure to

1. This portion of the facts was taken from *Watson v. Weick,* 141 Idaho 500, 112 P.3d 788 (2005). There, this Court affirmed in part and

reversed in part a grant of summary judgment and remanded the case for further proceedings.

appear for the May 13 debtor's exam and ordered him to five days in jail. Weick was immediately taken into custody, and Judge Mitchell issued an order to transport Weick to jail. That same day, Weick was released pursuant to a Writ of Habeas Corpus signed by the Honorable Fred Gibler. The day after the hearing, Weick filed a notice of appeal, and two days later Judge Mitchell issued a Memorandum Decision and Order Finding John Weick in Contempt (the written decision). Subsequently, the Honorable Fred Gibler quashed the Writ of Habeas Corpus, and Weick filed a Motion to Stay enforcement of the order finding him in contempt. Judge Mitchell denied this motion. Weick then filed an ex parte motion for a temporary stay with this Court, and later he filed a Motion for Stay. This Court denied both motions. However, the parties stipulate that Weick has not served his sentence.

## II. ISSUES ON APPEAL

1. Did the issuance of a second order compelling a second debtor's exam excuse Weick's non-compliance with the first order?

2. Was there substantial evidence to support Judge Mitchell's finding that Weick had willfully violated a court order by failing to appear at the May 13 debtor's exam?

3. Did Judge Mitchell abuse his discretion by sentencing Weick to five days in jail for contempt?

## III. STANDARD OF REVIEW

The sanction or penalty imposed under a contempt order is reviewed under an abuse of discretion standard. *Smith v. Smith*, 136 Idaho 120, 124, 29 P.3d 956, 960 (Ct.App.2001). The determination of whether a sanction or penalty should be imposed is within the discretion of the trial court. *Id.* This Court does not weight the evidence, but rather reviews the district court's findings to determine if they are supported by substantial and competent evidence. *Butler v. Goff,* 130 Idaho 905, 907 950 P.2d 1244, 1246 (1997). Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Camp v. E. Fork Ditch Co.,* 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). When the trial court exercises its discretion, this Court will not interfere unless the lower court clearly abused its discretion. *Smith,* 136 Idaho at 124, 29 P.3d at 960.

## IV. ANALYSIS

**A. The issuance of a second order compelling a second debtor's exam did not excuse Weick's non-compliance with the first order.**

Weick argues that the issuance of the "amended order" excuses his non-compliance with the first order. Weick stresses that the plain meaning of the word "amend"—to improve, correct or revise—signifies that Judge Mitchell changed and modified the first order. Therefore, he continues, "[b]ecause the amended order changed or modified the original order and [Weick] complied with that order, [he] can not now be held in contempt of an order that was amended by [Judge Mitchell]."

The second order did not excuse Weick's non-compliance with the first order. Idaho courts have the constitutional, statutory and inherent authority to compel obedience with their lawful orders. *Marks v. Vehlow,* 105 Idaho 560, 566, 671 P.2d 473, 479 (1983). "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal or though the basic action has become moot." *United States v. United Mine Workers of America,* 330 U.S. 258, 295, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (internal citation omitted). Even after the underlying action is no longer pending, a court may consider criminal contempt as a collateral issue. *Inland Group of Cos., Inc. v. Obendorff,* 131 Idaho 473, 475, 959 P.2d 454, 456 (1998). When a court has jurisdiction over the suit and the parties before it, its orders are to be obeyed until they are set aside by appropriate proceedings. *United Mine Workers,* 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913; *see In re Reeves,* 112 Idaho 574, 579, 733 P.2d 795, 800 (Ct.App. 1987) (quoting *Maness v. Meyers,* 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574, 582–84 (1975)). A conviction for crimi-

nal contempt that is entered before an order is set aside may stand. *United Mine Workers*, 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913. If a party does not obey a court order requiring a certain act, and no longer has the present ability to comply with that order, then only criminal contempt sanctions are available. *Camp*, 137 Idaho at 865, 55 P.3d at 319. A party may not knowingly violate a court order because he believes it to be incorrect. *In re Reeves*, 112 Idaho at 579, 733 P.2d at 800.

▌ Weick's argument suffers two fatal flaws: it seeks to elevate form over substance, and it ignores the basic policy rationale underlying a court's contempt power. First, Weick's "plain meaning" argument impermissibly elevates form over substance, and this Court will not exalt form over substance. *See, e.g., Bone v. City of Lewiston*, 107 Idaho 844, 849, 693 P.2d 1046, 1052 (1984). Weick's argument hinges on the fact that the second order is titled an "amended order." Had the second order been styled a "second order," "subsequent order," "another order," or simply "order," Weick's plain meaning argument would fail. Moreover, Weick impermissibly seeks to benefit from his own misdeed. His argument ignores the fact that Weick's non-compliance with the first order necessitated the second order. Once May 13 had passed, the first order expired; Weick could not be compelled to attend another debtor's exam without Judge Mitchell issuing another order. Substantively and procedurally, the title of the second order has no importance. Judge Mitchell issued two orders compelling Weick to attend a debtor's exam, each with a different date. Once Weick had failed to comply with the first order by missing the May 13 debtor's exam, he was liable for the consequences of his actions—criminal contempt—regardless of the title of the second order. *See United Mine Workers*, 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913; *Maness*, 419 U.S. at 458–60, 95 S.Ct. at 590–92, 42 L.Ed.2d at 582–84; *In re Reeves*, 112 Idaho at 579, 733 P.2d at 800.

▌ Second, public policy dictates that a party must obey an express order of the court. Courts have the contempt power in order to preserve their effectiveness and sustain their inherent and statutory power.

*Marks*, 105 Idaho at 566, 671 P.2d at 479; *In re Dudzinski*, 257 Mich.App. 96, 667 N.W.2d 68, 75 (2003). "This rule is based upon sound foundations of public policy. A trial court may make numerous rulings and issue a substantial number of orders during the course of a lawsuit. If a party were free to disobey any order with which he or she disagreed, the entire judicial process would break down." *In re Reeves*, 112 Idaho at 579, 733 P.2d at 800.

Under the law of criminal contempt, Judge Mitchell could have found Weick guilty of criminal contempt even after the underlying action was no longer pending. *Inland Group of Cos., Inc.*, 131 Idaho at 475, 959 P.2d at 456; *see also State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 740 N.E.2d 265, 270 (2001) ("[A] court may consider the collateral issue of criminal contempt even after the underlying action is no longer pending."); *Ex parte Durham*, 921 S.W.2d 482, 487–88 (Tex.App. 1996) (allowing contempt sanctions after final judgment in underlying case because the purposes underlying the order remain to be served). Weick would have been obligated to obey the first order regardless of any subsequent decisions regarding the validity of the first order. *Mathison v. Felton*, 90 Idaho 87, 94, 408 P.2d 457, 461 (1965); *see also United Mine Workers*, 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913; *Minnesota v. Andrasko*, 454 N.W.2d 648, 650 (Minn.Ct.App.1990) ("Because the trial court had jurisdiction to enter the order for protection, the vacation of the order after appellant violated it does not relieve appellant of the consequences of his acts."); *In re Dudzinski*, 667 N.W.2d at 77 (affirming contempt sanctions because "appellant's willful violation of the trial court's order, regardless of its correctness, warranted the trial court's finding of criminal contempt."). Had Judge Mitchell set the first order aside Weick still would have been obligated to obey the first order up until that time. *United Mine Workers*, 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913. Weick's non-compliance would not be excused pending an appeal challenging the first order. *Maness*, 419 U.S. at 458–60, 95 S.Ct. at 590–92, 42 L.Ed.2d at 582–84; *United Mine Workers*, 330 U.S. at 294, 67 S.Ct. at 696, 91 L.Ed. at 913; *In re Reeves*, 112 Idaho at 579, 733 P.2d at 800. Likewise, Weick's

non-compliance is not excused here simply because Judge Mitchell issued the second order compelling his attendance at another debtor's exam; only a determination that the order was invalid or a change to the order *prior* to Weick's non-compliance would excuse his performance of the first order. Neither the title of the second order nor Weick's compliance with the second order purges his contempt of the first order. There is simply *no sound reason in this instance, based on the substance of the order, the procedure Judge Mitchell used, or the policy underlying a court's contempt power, to make an exception to the rule that parties must obey the express order of a court.* Therefore, this Court holds that Weick's failure to attend the May 13 debtor's exam violated Judge Mitchell's first order and made him liable for criminal contempt.

## B. Judge Mitchell's finding that Weick had willfully violated a court order by failing to appear at the May 13 debtor's exam is supported by substantial and competent evidence.

### 1. *Willfulness*

As a preliminary matter, Judge Mitchell found that Weick's failure to attend the May 13 debtor's exam was a willful violation of Idaho Code § 7–601(5).[2] Although he now argues that he was not required to find that Weick willfully violated this section, this Court holds that willful is the correct standard to apply for two reasons.

First, applying a willful standard is consistent with the jurisprudence of this state and the majority of other states. *See generally,* 17 Am.Jur.2d Contempt §§ 23–25 *Contempt* (2004). To begin, this Court has long recognized implicitly that one's violation of a court order must be willful to justify an order of contempt. *Phillips v. Dist. Court of the Fifth Judicial Dist.,* 95 Idaho 404, 406, 509 P.2d 1325, 1327 (1973) ("when [a support order is] made specific by the judgment or order of a court of competent jurisdiction, he may be imprisoned in contempt proceedings for a willful failure to perform."); *Nordick v. Sorensen,* 81 Idaho 117, 132, 338 P.2d 766, 775 (1959) ("The testimony also clearly shows a course of willful and persistent violation, on the part of both defendants, of the district court's restraining order ... by virtue thereof, factually, the district court was justified in adjudging defendants and each of them in

2. Idaho Code § 7–601 provides the definition for contempt:

The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

1. Disorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceedings.

2. A breach of the peace, boisterous conduct, or violent disturbance tending to interrupt the due course of a trial or other judicial proceedings.

3. Misbehavior in office or other willful neglect or violation of duty by an attorney, counsel, clerk, sheriff, coroner or other person appointed or elected to perform a judicial or ministerial service.

4. Deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding.

5. Disobedience of any lawful judgment, order or process of the court.

6. Assuming to be an officer, attorney, counsel of a court, and acting as such without authority.

7. Rescuing any person or property in the custody of an officer by virtue of an order or process of such court.

8. Unlawfully detaining a witness or party to an action while going to, remaining at, or returning from, the court where the action is on the calendar for trial.

9. Any other unlawful interference with the process or proceedings of a court.

10. Disobedience of a subpoena duly served, or refusing to be sworn or answer as a witness.

11. When summoned as a juror in a court, neglecting to attend or serve as such, or improperly conversing with a party to an action to be tried at such court, or with any other person in relation to the merits of such *action, or receiving a communication from a party or other person in respect to it, without immediately disclosing the same to the court.*

12. Disobedience, by an inferior tribunal, magistrate or officer of the lawful judgment, order or process of a superior court, or proceeding in an action or special proceeding contrary to law, after such action or special proceeding is removed from the jurisdiction of such inferior tribunal, magistrate or officer. Disobedience of the lawful orders or process of a judicial officer is also a contempt of the authority of such officer.

contempt of its order."); *Potlatch Lumber Co. v. Bd. of Commissioners of Latah County*, 29 Idaho 516, 520, 160 P. 260, 262 (1916) ("We are satisfied that the commissioners used their best judgment in fixing the levy for general road purposes, and no evidence was offered that would justify this court in reaching the conclusion that the commissioners willfully and intentionally disobeyed the directions of this court, as set out in the writ of mandate, and that they are not guilty of a civil contempt of this court."). Additionally, the Court of Appeals has explicitly determined that a district court has the power to hold in contempt any person who willfully disobeys a specific and definite order of the court. *Conley v. Whittlesey*, 126 Idaho 630, 636, 888 P.2d 804, 810 (Ct.App.1995) (citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir.1984)); *see also Sivak v. State*, 119 Idaho 211, 214, 804 P.2d 940, 943 (Ct.App.1991); *State v. Tanner*, 116 Idaho 561, 564, 777 P.2d 1234, 1237 (Ct.App.1989).

■ Second, contempt is an extraordinary proceeding and should be approached with caution. This Court has recognized contempt is an extraordinary proceeding. *Phillips*, 95 Idaho at 405, 509 P.2d at 1326. This inherent power must be exercised with great caution. *See Hampton v. Hampton*, 303 Minn. 500, 229 N.W.2d 139, 140–41 (1975). The contempt power is

> readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution.

*People v. Bernard*, 75 Ill.App.3d 786, 31 Ill. Dec. 617, 622, 394 N.E.2d 819 (1979). Since a contempt citation is a "potent weapon, .... courts rightly impose it with caution." *Joshi v. Prof. Health Servs., Inc.*, 817 F.2d 877, 879 n. 2 (D.C.Cir.1987). Imposing a willful standard ensures that courts cannot abuse their inherent contempt power. It also ensures that courts only impose such an extraordinary remedy when the alleged contemnor has wrongfully disobeyed a court order.

In the area of contempt, this Court has only once offered a definition of "willful." In *Butler v. Goff,* this Court determined that the proper standard for determining willfulness when an attorney fails to appear in court and is found in contempt under Idaho Code § 7–601(3) is "an indifferent disregard of duty" or "a remissness and failure in performance of a duty" but not a "deliberately and maliciously planned dereliction of duty." 130 Idaho at 909, 950 P.2d at 1248. This comports with the general definition of "willful" set out by this Court over half a century ago. In 1953, this Court held "the word 'willfully' when applied to the intent implies simply a purpose or willingness to commit the act or make the omission ... no intent to violate the law or injure another, or to acquire any advantage is necessary." *State v. Johnson,* 74 Idaho 269, 275–76, 261 P.2d 638, 641 (1953).

Since the definition of "willful" set out in *Butler* comports with the general definition of willful established by this Court and helps ensure that courts do not abuse their contempt power, this Court holds this definition—"an indifferent disregard of duty" or "a remissness and failure in performance of a duty" but not a "deliberately and maliciously planned dereliction of duty"—applies to contempt proceedings under I.C. § 7–601(5).

*2. Evidence*

■ Turning to the evidence underlying Judge Mitchell's decision, Weick argues that his attendance at the May 26 debtor's exam was compliance with the first order as later amended, and therefore there is no evidence that he disobeyed any lawful order of the court. However, the *uncontested* evidence is that Weick did not attend the May 13 debtor's exam although he was aware of it. The evidence in the record is sufficient to support Judge Mitchell's finding Weick had failed to comply with the first order and that this failure was willful under the above definition. Therefore, because Weick willfully failed to attend the May 13 debtor's exam, the issue becomes whether there was substantial evidence to support Judge Mitchell's finding, beyond a reasonable doubt, that Weick's ex-

cuse of severe intestinal distress was insufficient to avoid a contempt sanction.

 On appeal, this Court will not set aside findings of fact, unless they are clearly erroneous. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997) (citing I.R.C.P. Rule 52(a)). This Court does not weight the evidence, but rather reviews the district court's findings to determine if they are supported by substantial and competent evidence. *Butler*, 130 Idaho at 907 950 P.2d at 1246. If a district court's findings of fact are supported by substantial and competent, though conflicting, evidence this Court will not disturb the findings. *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Camp*, 137 Idaho at 856, 55 P.3d at 310.

 Weick argues the Watsons had to prove beyond a reasonable doubt he was not ill on May 13. However, that is an incorrect statement of the burden of proof. The burden of proving contempt beyond a reasonable doubt remains on the complainant, but the contemnor bears the burden of producing evidence that creates a reasonable doubt as to his ability to comply. *See Hicks v. Feiock*, 485 U.S. 624, 637–38, 108 S.Ct. 1423, 1432–33, 99 L.Ed.2d 721, 734–35 (1988); *see also Parker v. Parker*, 97 Idaho 209, 213–14, 541 P.2d 1177, 1181–82 (1975); *In re Martin*, 76 Idaho 179, 187, 279 P.2d 873, 878 (1955); *Lusty v. Lusty*, 70 Idaho 382, 384, 219 P.2d 280, 282 (1950). Here, Weick bore the burden of producing evidence sufficient to create reasonable doubt about his ability to comply. The Watsons needed only to prove beyond a reasonable doubt that Weick failed to comply with the first order when he had the ability, not that Weick's proffered excuse is false.

There is substantial and competent evidence in the record to support Judge Mitchell's conclusion that Weick's affidavit failed to create reasonable doubt about Weick's ability to comply. Weick did not testify at the contempt hearing. Instead, he relied solely on his affidavit signed in California the day after the first exam that states:

> On the morning of May 13, 2004, I was suffering from severe intestinal distress with many trips to the bathroom.... [M]y physical condition prevented me from attending the debtor's examination that morning.... My failure to attend the debtor's examination was not intentionally done to delay or cause any problems to the [Watsons] but was strictly and simply a result of my illness.

This was the only testimony regarding Weick's illness. This evidence supports Judge Mitchell's conclusion that Weick failed to raise reasonable doubt as to his guilt.

 Under our law, inability to comply is not a defense unless the contemnor complied to the extent of his ability. *In re Bean*, 58 Idaho 797, 802, 79 P.2d 540, 542 (1938). Beyond Weick's bare assertion that his illness prevented his attendance, there is no indication why Weick could not have attended and made reasonable accommodations for his illness; there is no indication why he was well enough to travel out of state soon after the scheduled debtor's exam, but too ill to attend the debtor's exam.[3] Therefore, the evidence presented supports Judge Mitchell's conclusion that Weick failed to produce evidence that he complied to the extent of his ability and failed to raise a reasonable doubt as to his guilt.

**C. Judge Mitchell did not abuse his discretion by sentencing Weick to five days in jail for contempt.**

 The abuse of discretion inquiry examines (1) whether the district judge correctly perceived the issue as one of discretion; (2) whether the district judge acted within the outer boundaries of his discretion and consistently with the legal standards applicable to the specific choices available to him; and (3) whether the district judge reached his decision through an exercise of reason. *Weaver v. Stafford*, 134 Idaho 691, 700, 8 P.3d 1234, 1243 (2000).

---

**3.** The jurat of Weick's affidavit shows that he was in California on May 14—one day after the scheduled debtor's exam.

Weick first questions whether Judge Mitchell perceived the issue of sentencing for contempt as one of discretion, while admitting that there is some evidence that Judge Mitchell did perceive the issue as one of discretion. Here, Idaho Code § 7–610 provides the possible penalties for contempt:

> Upon the answer and evidence taken, the court or judge must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, *a fine may be imposed on him not exceeding five thousand dollars ($5,000), or he may be imprisoned not exceeding five (5) days, or both;* except that if the contempt of which the defendant be adjudged guilty be a disobedience of a judgment or order for the support of minor children, he may be imprisoned not exceeding thirty (30) days in addition to such fine, under this section, as the court may impose. *Additionally, the court in its discretion, may award attorney's fees and costs to the prevailing party.*

I.C. § 7–610 (emphasis added). Judge Mitchell could have imposed both: (1) a fine of up to five thousand dollars as well as attorney's fees and costs, and (2) imprisonment. He chose to impose only jail time. Therefore, he correctly perceived the issue as one of discretion. Additionally, there is no question, and Weick concedes, that the five-day sentence imposed is at the outermost boundary of Judge Mitchell's discretion.

Weick focuses primarily on whether Judge Mitchell reached his decision through an exercise of reason. He argues that the written decision is an after-the-fact justification offered to bolster the record on appeal; that the language of the decision makes it clear that Judge Mitchell wanted to punish Weick for being "obstreperous," a "sore loser" and a "complainer;" and that the sentence was not necessary to vindicate the court's jurisdiction or proper function because Weick had already complied with the amended order.[4]

However, the record here indicates that Judge Mitchell examined the evidence and reached a reasoned conclusion. When pronouncing the sentence at the hearing on the order to show cause Judge Mitchell explained his reasoning:

> [W]here it's alleged that John Weick failed to appear for the first scheduled debtor's exam, that has been proven beyond a reasonable doubt that he failed to appear. Now, the issue becomes then whether or not his excuse that he was sick with diarrhea is a valid excuse, and the Court finds that it wasn't a valid excuse, that beyond a reasonable doubt it's not a valid excuse. Certainly someone that has that condition can still sit through a deposition. While it may be that breaks are required for the deposition, there's nothing to indicate to the Court in the record that that would obviate Mr. Weick's presence for that diuretic condition. It's further proof of that that apparently the next day he was in the state of California. If he's sick enough to not attend a debtor's exam but not sick enough to catch a plane that day or certainly the next day, that's inconsistent, but the main difficulty that the Court has is there is simply no indication really from the affidavit as to exactly why that condition caused a lack of attendance. Certainly accommodations could've been made to deal with that condition and the deposition or the debtor's exam still have gone forward, so I do find that there was a willful violation of Item A in the Order to Show Cause Why John Weick Should Not be Held in Contempt.
>
> The Court finds Mr. Weick in contempt and orders him to be incarcerated for five days in the county jail.

Next, when issuing the written decision, Judge Mitchell reiterated this reasoning and explained further how he reached his determination that Weick's offer of proof as to his illness was not credible. He noted throughout the course of the litigation Weick had engaged in conduct to delay and then to prevent execution of the judgment against

---

4. Weick's additional claim that the decision "makes no reference to any elements of mitigation, justification or excuse on the part of [Weick]" is incorrect. The decision discusses the excuse offered by Weick, the burden of production applicable to Weick's defense, and the evidence offered to prove the defense.

him, and Weick's conclusory statements that he did not intend to delay the debtor's exam were inconsistent with his prior actions. There is nothing improper about Judge Mitchell examining the record and course of Weick's conduct to determine his credibility. Therefore, Judge Mitchell examined the evidence and reached his decision through an exercise of reason.

Finally, Weick argues that the five-day sentence was not necessary to vindicate the court's jurisdiction or its proper function because he complied with the second order. Weick's argument here fails because it assumes that his compliance with the first order was excused and therefore he cannot be punished for his failure to attend the May 13 debtor's exam. As noted above, his appearance at the second exam did not excuse his failure to appear at the first.

## V. CONCLUSION

This Court affirms the district court's decision. Costs to the Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

